STATE OF NORTH CAROLINA
v.
JEREMY ANTUAN MARSH, Defendant

No. COA13-190

Filed 17 September 2013

**Constitutional Law—effective assistance of counsel—failure to raise issue—vacated first-degree murder sentence improper**

    The trial court erred by vacating defendant's conviction for first-degree murder. The pertinent juror did not provide improper extraneous prejudicial information to the jury, and thus, defendant's trial counsel did not provide ineffective assistance of counsel by failing to raise this issue before the trial court. The case was reversed and remanded to the trial court for consideration of defendant's remaining issues presented in his various motions for appropriate relief.

    Appeal by the State from order entered 22 October 2012 by Judge John O. Craig, III, in Superior Court, Randolph County. Heard in the Court of Appeals 6 June 2013.

    *Attorney General Roy A. Cooper, III, by Assistant Attorney General Teresa M. Postell, for the State.*

    *The Law Office of Bruce T. Cunningham, Jr., by Amanda S. Zimmer, for defendant-appellee.*

STROUD, Judge.

    The State appeals the order of the trial court vacating defendant's sentence for first degree murder. For the following reasons, we reverse and remand.

## I. Background

    On or about 21 March 2003, defendant was convicted of, *inter alia*, first degree murder and sentenced to life imprisonment without parole; that same day defendant appealed to this Court. Within the week, defendant filed a motion for appropriate relief ("MAR 1") with the trial court arguing that his "counsel was ineffective in his representation of the Defendant . . ., and that Defendant therefore did not receive a fair and impartial trial with due process of law and his conviction and sentencing is in violation of the" United States and North Carolina Constitutions.

Defendant's MAR 1 stated that he had "discovered, after the return of the verdict, and after giving Notice of Appeal in open Court, that there were certain irregularities in the jury's deliberations that give reasonable grounds to question the validity of the verdict in this case." Defendant's MAR 1 included an affidavit from a juror, Kathleen Newsom, averring that

> various jurors claimed that a conviction of second degree murder would result in the release of the Defendant after serving a term of no more than eight years in prison . . . . [and that she] was overborne by the other eleven jurors, and she agreed to assent to the verdict of guilty of first degree murder in order to return a unanimous verdict . . . .

Juror Newsom also averred that

> [w]ere the jury to have been individually polled by the Court at the request of the Defendant, there is a possibility that the undersigned would have informed the Court that she did not assent to that verdict and that it was not a unanimous verdict of guilty of first degree murder.

The State opposed defendant's MAR 1, and in January of 2004 at the hearing on the MAR, defendant's trial counsel testified that he did not have any strategic reason for his failure to request a poll of the jury. Juror Newsom also testified to essentially the same facts as were stated in her affidavit, but she emphasized that, had she been individually polled, she would have informed the judge that she did not assent to the verdict of guilty of first degree murder:

> [A]s I look back on it, you know, now, I absolutely wouldn't waiver [sic] because I've had so much time to think about it . . . .
>
> . . . .
>
> . . . I would be very certain that even at that point [if we had been polled] I would have said no, I don't agree.

Juror Newsom also testified that

> we took a vote as to who thought . . . [defendant was guilty of] first-degree murder . . . and basically from the gate it was convincing us as to why w[e] needed to vote that way.
>
> . . . .
>
> I said I was very comfortable with voluntary manslaughter and perhaps second-degree murder, but definitely not

first-degree murder. . . . I absolutely did not think it was planned out well ahead of time and . . . [that defendant] had come and just done cold-blooded murder. . . . .

. . . .

[But the other jurors, w]ell, they were vehemently against [a verdict other than first-degree murder], especially there were probably two or three of the men especially. It was two women who were dissenting, in my opinion. . . . [But after ·another vote] I was the only one left at that point. But one of the gentlemen began making comments like . . . would you want Jeremy Marsh to come shoot your son. Or how would you feel if you give him second-degree murder, he'll be out in eight years, and he will come after your son . . . .

. . . .

. . . There was a good deal of discussion [about sentencing and] why second-degree murder would not be a good verdict.

. . . .

. . . I think the main thought in my head was the reason I changed my vote is I knew that it had to be a unanimous decision. . . .

. . . .

. . . I voted against my conscience.

Juror Newsom's testimony also addressed the impact that the other jurors' statements had on her deliberations:

[I]t was very difficult for me to be in that jury room with the other jurors. Because my – Because my opinion was different than theirs.

. . . .

[The comments regarding the defendant coming after my son were] very emotionally difficult for me to deal with.

. . . .

. . . And you have to understand me to understand . . . I'm a people pleaser by nature, and so it's really tough to sit

**STATE v. MARSH**

[229 N.C. App. 606 (2013)]

in [that] environment and have especially some very, very adamant and vehement comments made to me . . . . [I had a lot of] thoughts swirling around, and so my judgment at that moment was not what I wish it would have been.

. . . .

On 16 January 2004, the trial court denied defendant's MAR 1. Defendant appealed.

On 19 July 2005, in *State v. Marsh*, 171 N.C. App. 516, 615 S.E.2d 739, 2005 WL 1669335 at *3 (unpublished) (2005) ("*Marsh I*"), this Court issued an opinion addressing the appeal of both defendant's judgment convicting him of first degree murder and his MAR 1. In *Marsh I*, this Court noted that defendant had "abandoned" any issues regarding MAR 1, and ultimately found no error as to defendant's conviction for first degree murder. *Marsh* at *3, *6.

In defendant's first appeal, the record included Juror Newsom's 2003 affidavit as well as the trial court's order denying MAR 1, but the issues presented in MAR 1, including those regarding extraneous information and failure to poll the jury, were not presented as one of the 36 assignments of error raised in the first appeal. This Court noted that "In his brief, defendant brings forward only six of the thirty-six assignments of error set forth in the record on appeal. His remaining assignments of error, *including those related to his motion for appropriate relief*, are deemed abandoned." *See id.* at *3 (emphasis added). Defendant filed a petition for discretionary review with the Supreme Court of North Carolina, which was subsequently denied on 21 October 2003. On 2 August 2006, defendant petitioned this Court for a writ of certiorari because he "was under the assumption that [his] MAR [1] would be appealed with [his] Direct Appeal." On 22 August 2006, this Court denied defendant's petition.

On 22 May 2008, defendant filed a second MAR ("MAR 2") bringing forth two claims:

> [1.] The defendant's rights secured by the Sixth Amendment to the United States Constitution and the North Carolina Constitution were violated when the jury based their decision in part on extraneous information regarding punishment which was inaccurate and not properly introduced into evidence and because a juror was intimidated into voting for first degree murder.

. . . .

[2.] The defendant did not receive effective assistance of counsel during his MAR hearing and on direct appeal because his trial counsel failed to amend the MAR to conform to the testimony given during the hearing and his appellate counsel failed to raise the issues on direct appeal.

(Original in all caps.)

On or about 7 August 2008, defendant filed an amendment to his MAR 2 ("MAR 2.1") and added three more claims:

[3.] The failure of trial counsel to adequately preserve the issue of testimony related to self defense constituted ineffective assistance of counsel. Further, the failure of appellate counsel to raise an ineffective assistance of counsel claim due to the failure to preserve the testimony on direct appeal constituted ineffective assistance of appellate counsel.

[4.] The failure to provide the defendant with notice and opportunity to be heard when both a trial attorney and appellate attorney withdrew from representing the defendant violated the defendant's right to due process, and right to counsel.

[5.] The defendant did not receive effective assistance of counsel because his trial counsel failed to include in the defendant's MAR a claim that the jury was given extraneous information regarding the punishment for second degree murder.

(Original in all caps.) On or about 5 November 2008, the State filed a response in opposition to defendant's MAR 2.

On or about 17 December 2008, defendant filed a second amendment to his MAR 2 ("MAR 2.2") arguing:

[6.] The district attorney improperly delegated his prosecutorial function and discretion to the victim's family members when he proffered a plea to second degree murder to the defendant, contingent on defendant's trial counsel tendering that plea to the victim's family and the victim's family accepting the plea offer, in violation of the defendant's right to due process as secured by the

Fourteenth Amendment of the United States Constitution and N.C. Const. Art IV, § 18.

(Original in all caps.)

On 11 March 2009, defendant filed a third amendment to his MAR 2 ("MAR 2.3") arguing that "defense counsel's dual representation of defendant and [a] key prosecution witness in an unrelated case established conflict of interest in violation of defendant's right to counsel as secured by the Sixth and Fourteenth Amendment." (Original in all caps.)

On 22 October 2012, the trial court vacated defendant's conviction for first degree murder based upon defendant's MAR 2. The State petitioned this Court for a writ of certiorari to review the trial court's order vacating defendant's sentence, and on 5 November 2012, this Court allowed the State's petition.

## II.  Standard of Review

> When considering rulings on motions for appropriate relief, we review the trial court's order to determine whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court.

*State v. Frogge*, 359 N.C. 228, 240, 607 S.E.2d 627, 634 (2005) (citation omitted) (citation and quotation marks omitted).

## III.  MAR 2

The State contends that the trial court erred in vacating defendant's conviction for first degree murder. Facially, the trial court appears to have granted claim one of defendant's MAR 2, which alleged that

> [t]he defendant's rights secured by the Sixth Amendment to the United States Constitution and the North Carolina Constitution were violated when the jury based their decision in part on extraneous information regarding punishment which was inaccurate and not properly introduced into evidence and because a juror was intimidated into voting for first degree murder.

(Original in all caps.) In fact, the trial court's order is even entitled "Order Granting Claim One of Defendant's Motion for Appropriate Relief[.]" (Original in all caps.) Yet it is clear from the trial court's order

that defendant's conviction was actually vacated on the basis of his second claim in MAR 2 which alleged

> [t]he defendant did not receive effective assistance of counsel during his MAR hearing and on direct appeal because his trial counsel failed to amend the MAR to conform to the testimony given during the hearing and his appellate counsel failed to raise the issues on direct appeal.

(Original in all caps.) Indeed, the trial court concluded that

> 3. The Defendant was entitled to the effective assistance of counsel at the trial level and the appellate level. . . .

> 4. The failure of trial counsel . . . to raise and vigorously argue in . . . [MAR 1] the question of whether prejudicial extraneous information had been injected into the jury deliberations, constituted ineffective assistance of counsel, in violation of the Defendant's rights secured by the Sixth and Fourteenth Amendments to the United States Constitution.

> 5. The failure of appellate counsel to present the issue to the Court of Appeals of whether prejudicial extraneous information had been injected into the jury deliberation and whether trial counsel had provided effective assistance of counsel in preparing and presenting the ten day MAR, constituted ineffective assistance of counsel, in violation of the Defendant's rights secured by the Sixth and Fourteenth Amendments to the United States Constitution.

In summary, the trial court actually determined that the second claim in MAR 2 regarding ineffective assistance of counsel was a proper ground upon which to vacate defendant's conviction for first degree murder as the appellate counsel failed to raise the ineffectiveness of defendant's trial counsel in failing to raise the issue presented in defendant's MAR claim two regarding extraneous information being presented to the jury.

Rule 606(b) of the North Carolina Rules of Evidence provides that

> [u]pon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from

the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether *extraneous prejudicial information* was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

N.C. Gen. Stat. § 8C-1, Rule 606(b) (2007) (emphasis added). Regarding a juror's testimony about extraneous information, the North Carolina Supreme Court has stated that under Rule 606(b)

extraneous information is information dealing with the defendant or the case which is being tried, which information reaches a juror without being introduced in evidence. It does not include information which a juror has gained in his experience which does not deal with the defendant or the case being tried.

*State v. Rosier*, 322 N.C. 826, 832, 370 S.E.2d 359, 363 (1988); *see State v. Quesinberry*, 325 N.C. 125, 135-36, 381 S.E.2d 681, 688 (1989) ("Under North Carolina Rule 606(b), as interpreted in *Rosier*, allegations that jurors considered defendant's possibility of parole during their deliberations are allegations of 'internal' influences on the jury. First, the 'information' that defendant would be eligible for parole in about ten years was not information dealing with this particular defendant, but general information concerning the possibility of parole for a person sentenced to life imprisonment for first degree murder. Second, there is no allegation that the jurors received information about parole eligibility from an outside source. The juror affidavits state that it was the jurors' 'idea,' 'belief,' or 'impression' that defendant would be released in ten years. We have said that it would be naive to believe jurors during jury deliberations do not relate the experiences they have had, and that the possibility of parole or executive clemency is a matter of common knowledge among most adult persons. Most jurors, through their own experience and common knowledge, know that a life sentence does not necessarily mean that the defendant will remain in prison for the rest of his life. Therefore, the jurors' 'belief' about defendant's possibility of parole was an 'internal' influence on the jury. Allowing jurors to impeach their verdict by revealing their 'ideas' and 'beliefs' influencing their verdict is not supported by case law, nor is it sound public policy." (citations,

quotation marks, and brackets omitted)), *pet. for writ of cert. granted and judgment vacated on other grounds*, 494 U.S. 1022, 108 L.Ed. 2d 603 (1990). Accordingly, extraneous information "deal[s] with the defendant or" defendant's case. *Rosier*, 322 N.C. at 832, 370 S.E.2d at 363. Even prohibited information that simply relates to the defendant's case is not necessarily extraneous. *Id.* at 832, 370 S.E.2d at 362–63 ("Although the foreman of the jury should have obeyed the instructions of the court and not have watched the program on child abuse, the matters he reported to the jury did not deal with the defendant or with the evidence introduced in this case.").

The jurors' comments about defendant's possible sentence or a fear of possible future retribution are not specific information regarding "the defendant or the case being tried." *Id.* at 832, 370 S.E.2d at 363. Comments about potential sentencing or even about a fear of retribution from a defendant who has, after all, allegedly killed another person, are general and nonspecific. These comments were about defendant or defendant's case only in the general sense that all of the jurors' substantive discussions are necessarily regarding "the defendant or the case being tried." *Id.* Defendant and his alleged actions are the subject of their deliberations. The difference is that the jurors' discussion as expressed by Juror Newsom is not specific extraneous factual information about this defendant. For example, if a juror told the other jurors that he got an anonymous phone call the prior evening from a caller who said that defendant told him he would kill the juror's son if he ever got out of prison, this would be specific information regarding defendant, and thus extraneous information. *See id.* Certainly jurors often discuss their personal ideas and beliefs about many issues, and these comments may at times be incorrect in the legal sense or without any basis in fact, but Rule 606(b) still forbids inquiry into these matters unless the information presented is specific information about "the defendant or the case being tried." *Id.*; see N.C. Gen. Stat. § 8C01, Rule 606(b).

Even assuming *arguendo* that had Juror Newsom been polled she would have dissented and revealed the jury's discussion regarding defendant's possible sentence, this information would still not be considered extraneous pursuant to North Carolina General Statute § 8C-1, Rule 606(b). *See* N.C. Gen. Stat. § 8C-1, Rule 606(b). As the information revealed by Juror Newsom was not extraneous, defendant's trial counsel did not render ineffective assistance by his failure to raise this issue in defendant's MAR 1, and since defendant's trial counsel was not ineffective in this regard, defendant's appellate counsel also was not ineffective in failing to raise the issue on appeal. *See generally, State*

*v. Mitchell*, ___ N.C. App. ___, ___, 735 S.E.2d 438, 442 (2012) ("The United States Supreme Court has set forth the test for determining whether a defendant received constitutionally ineffective assistance of counsel . . . . Pursuant to the two part test, the defendant must first show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." (citation and quotation marks omitted)).

## IV. Conclusion

As the information presented by Juror Newsom was not "extraneous prejudicial information [which] was improperly brought to the jury's attention or . . . any outside influence[,]" N.C Gen. Stat. § 8C-1, Rule 606(b), upon the jury deliberations, defendant's trial counsel did not provide ineffective assistance of counsel in failing to raise this issue before the trial court and defendant's appellate counsel was not ineffective in failing to raise the issue of defendant's trial counsel's ineffectiveness. Accordingly, we reverse and remand for the trial court to consider defendant's remaining issues presented in his various MARs to the extent that they have not previously been addressed by the trial court or this Court.

REVERSED AND REMANDED.

Judges CALABRIA and DAVIS concur.